UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| STEPHEN M. DEANE,<br><br>Plaintiff,<br><br>v.<br><br>NANCY B. MARTHAKIS, et al.,<br><br>Defendants. | CAUSE NO. 3:24-CV-760-GSL-AZ |

OPINION AND ORDER

Stephen M. Deane, a prisoner without a lawyer, moves for a preliminary injunction. (ECF 10.) He was granted leave to proceed against Dr. Nancy Marthakis and Nurse Practitioner ("NP") Diane Thews for denying him medical care in violation of the Eighth Amendment, and against the Warden of Indiana State Prison ("ISP") in his official capacity for injunctive relief. (ECF 7.) He presently argues that he is in need of immediate injunctive relief while this case is pending in the form of a referral to an outside medical provider and other treatment. (ECF 10 at 12.) The court ordered a response from the Warden, which has now been filed. (ECF 19.) The Warden argues that preliminary injunctive relief is not warranted and submits approximately 200 pages of medical records and other documentation in support. (ECF 19-1; ECF 19-2; ECF 19-3; ECF 19-4.)

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original). "A

plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

On the first prong, "the applicant need not show that [he] definitely will win the case." *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). However, "a mere possibility of success is not enough." *Id.* at 762. "A strong showing . . . normally includes a demonstration of how the applicant proposes to prove the key elements of its case." *Id.* at 763 (quotation marks omitted). In assessing the merits, the court does not simply "accept [the plaintiff's] allegations as true" or "give him the benefit of all reasonable inferences in his favor, as would be the case in evaluating a motion to dismiss on the pleadings." *Doe v. Univ. of S. Indiana*, 43 F.4th 784, 791 (7th Cir. 2022). Instead, the court must make an assessment of the merits as "they are likely to be decided after more complete discovery and litigation." *Id.*

On the second prong, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with . . . injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. Mandatory preliminary injunctions—"those requiring an affirmative act by the defendant"—are "cautiously viewed and sparingly issued." *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020). Additionally, in the prison context, the court's ability to grant injunctive relief is limited. "[I]njunctive relief to remedy unconstitutional prison conditions must be narrowly drawn, extend no

further than necessary to remedy the constitutional violation, and use the least intrusive means to correct the violation of the federal right." *Westefer v. Neal*, 682 F.3d 679, 681 (7th Cir. 2012) (citation and internal quotation marks omitted); *see also Rasho v. Jeffreys*, 22 F.4th 703, 711-13 (7th Cir. 2022) (outlining strict limitations on granting injunctive relief in correctional setting).

Inmates are entitled to adequate medical care under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To prove an Eighth Amendment violation, a prisoner must demonstrate (1) he had an objectively seriously medical need and (2) the defendant acted with deliberate indifference to that medical need. *Id.* A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious even a lay person would recognize as needing medical attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005).

Inmates are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019), nor are they entitled to "the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Rather, they are entitled to "reasonable measures to meet a substantial risk of serious harm." *Forbes*, 112 F.3d at 267. Negligence or medical malpractice does not establish an Eighth Amendment violation. *Walker*, 940 F.3d at 965. Likewise, a mere disagreement between a prisoner and a medical professional about the proper course of treatment does not establish an Eighth Amendment violation. *Lockett v. Bonson*, 937 F.3d 1016, 1024 (7th Cir. 2019). Instead, courts "defer to medical professionals' treatment decisions unless there is evidence that no minimally competent professional would have so responded under those

circumstances." *Walker*, 940 F.3d at 965 ( citation and internal quotation marks omitted). This standard "reflects the reality that there is no single 'proper' way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field." *Lockett*, 937 F.3d at 1024 (citation omitted).

The record reflects that Deane is 72 years old and suffers from several chronic illnesses including gout, hypertension, and high cholesterol, for which he is prescribed medication. He has also been diagnosed with an abdominal aortic aneurysm,[1] has a history of smoking, and is overweight. (ECF 19-1.) On February 3, 2023, Deane was seen by a non-party NP for a chronic care visit regarding his hypertension, hyperlipidemia, and gout. A physical examination revealed no abdominal abnormalities. The NP noted that his hypertension and hyperlipidemia were well-controlled on his current medications. She ordered laboratory testing, renewed his medications, and started him on a vitamin supplement. (ECF 19-1 at 150-53.)

On February 21, 2023, he underwent an EKG. A non-party NP reviewed the EKG results and found them normal. (*Id.* at 141.) The following month, he was seen by a non-party nurse for an annual "well encounter" and was cleared to perform his job in the prison kitchen. He was given a shingles vaccine, and the nurse ordered laboratory testing and an abdominal aortic ultrasound screening. (*Id.* at 116-18.) A few days later the laboratory tests were performed. (*Id.* at 98-100.)

---

[1] Aortic aneurysms are "weakened and bulging areas in the aorta, the body's main supplier of blood." *Black v. Long Term Disability Ins.*, 582 F.3d 738, 741 (7th Cir. 2009) (citation omitted).

4

On March 20, 2023, he underwent an abdominal aortic aneurysm screening, which revealed a mid-abdominal aortic aneurysm. Dr. Robert Mehl, a radiologist, reviewed the imaging and recommended a computed tomograpy ("CT") scan if one had not already been performed, but noted no evidence of "acute complication" from the aneurysm. (ECF 10 at 14.) A non-party NP reviewed these results on March 22, 2023. (*Id.*) On March 23, March 24, March 25, March 26, and April 3, Deane had nurse visits for an unrelated problem involving an abscess under his arm. (ECF 19-1 at 81-89.)

In May 2023, Deane was seen by Dr. Marthakis for a chronic care visit. His blood pressure was normal, as was the doctor's physical examination, including an examination of his abdomen. She renewed his medications. (ECF 19-1 at 79-80.) She also noted that he reported "eating fatty foods lately" and indicated that he "needs to cut back." (*Id.* at 79.) She counseled him on a proper diet and adhering to his medication regimen. (*Id.*)

In September 2023, Deane was seen by a non-party NP for a chronic care visit. His blood pressure was "moderately elevated" and he reported that he had not taken his blood pressure medication that day. Her physical examination was normal, except that he had a body-mass index of 30.67.[2] She renewed his medications and advised him to follow up in six months. (*Id.* at 73-75.)

On March 1, 2024, he was scheduled to see a doctor but did not appear for that visit. (*Id.* at 70.) Two weeks later, he was seen by a non-party nurse for a "well

---

[2] This body-mass index is considered "obese" by the National Institutes of Health. *See* https://www.nhlbi.nih.gov/health/educational/lose_wt/BMI/bmicalc.htm (last visited Oct. 22, 2024).

5

encounter." It was noted that his blood pressure was elevated and that he had not taken his blood pressure medication that day. The nurse counseled him on taking his medications as prescribed. (*Id.* at 60-63.) She noted that his medications and lab testing were all current. (*Id.* at 63-65.)

On April 30, 2024, he was seen by NP Thews for a chronic care visit. His blood pressure was 138/80. Her physical examination, including an examination of his abdomen, was normal. (*Id.* at 53-57.) It was noted that he was "not adhering to diet, exercise for. . . hyperlipidemia." (*Id.* at 52.) He was counseled on increasing his physical activity and fiber intake and avoiding fatty and processed foods purchased at the commissary. (*Id.* at 55.)

The following month, Deane was seen by Dr. Marthakis after complaining about pain on the left side of his foot. He requested a pass so that he would not be placed in a cell above the second floor, and this request was approved. It was reported that he had not taken his blood pressure medication that day and his blood pressure was recorded as 158/85. Dr. Marthakis examined his foot and noted lateral callous formation on the 5th digit of his left foot. She noted no open wound or swelling and ordered an x-ray. (*Id.* at 47-51.) It was noted that he was current on his lab testing. (*Id.*)

On July 4, 2024, Mr. Deane presented for a nurse visit complaining of leg pain and asking to review his laboratory results. His blood pressure was 200/100 and he rated his leg pain as an 8 on a scale of 1 to 10. A non-party nurse administered a dose of Clonidine for high blood pressure and gave him Tylenol 500 mg for his leg pain. (*Id.* at 42-45.) An hour later, she rechecked his blood pressure but it was still elevated.

However, Deane signed a medical refusal form indicating he did not wish to stay in the medical unit for observation any longer. The nurse explained to him the risks of not taking his blood pressure medication as prescribed, and he told her that he understood. (*Id.* at 45.)

On July 25, 2024, he presented for a nurse visit after slipping on a wet floor and reported pain in his groin. He was advised to rest and apply hot and cold packs. The nurse wanted to order an x-ray, but he declined. She told him to return if his swelling and pain increased or did not subside in two days. (*Id.* at 37-40.)

On July 29, 2024, he presented for a provider visit complaining of leg pain and numbness in his feet. He reported to NP Thews that his previous ultrasound had shown an abdominal aortic aneurysm and complained that he had not heard anything further. She noted that he was negative for abdominal pain, nausea, or vomiting but reported numbness in his extremities. The NP's physical examination was otherwise normal, including her examination of his abdomen, and his blood pressure was recorded at 122/68. (*Id.* at 32-35.) That same day, NP Thews submitted a request for an abdominal ultrasound to monitor his abdominal aortic aneurysm. (*Id.* at 28-29.) She also ordered lab testing and prescribed naproxen and Tylenol for pain. He was instructed to follow up with medical staff if he experienced no improvement or if his symptoms worsened. (*Id.* at 32-36.)

A few days after this visit, on August 4, 2024, Deane sent a letter to the Warden complaining about the treatment he was receiving for his abdominal aneurysm. (ECF 19-2; ECF 19-3.) He asked, "Is everybody just waiting on this to rupture and kill me?"

(ECF 19-3.) The Warden's assistant forwarded the letter to the prison's Health Services Administrator, a non-party, to follow up on his complaint. (ECF 19-2; ECF 19-4.)

Two days after he wrote the letter, on August 6, 2024, he underwent a second abdominal aortic aneurysm screening which revealed his aneurysm had grown larger since the previous screening. Dr. Mehl, the radiologist, noted that Deane still did not appear to be experiencing any acute complications related to the aneurysm. (ECF 10 at 34.)

The following week, Deane presented for a sick call visit. His blood pressure was 194/99 and he reported abdominal pain. He also reported numbness in his legs and stated that his legs had "given out" the night before. Dr. Marthakis reviewed his ultrasound results, ordered an EKG, and ordered that he remain in the medical unit for observation. (ECF 19-1 at 23-27.) Several hours later, the EKG was completed and showed no changes from his last test. He also reported that he was no longer experiencing abdominal pain and informed a nurse that he believed it was his blood pressure that had been causing the pain. He was released and scheduled for a follow-up visit later that week. (*Id.* at 21-23.) He did not appear for that visit and so the appointment was rescheduled. (*Id.* at 19-20.)

On September 3, 2024, he was seen by a non-party medical provider. He reported that he was concerned his aortic aneurysm was growing. That same day, the provider submitted a request for a CT angiogram of the abdomen and pelvis and an arterial doppler of his lower extremities. (*Id.* at 12-16.) She also renewed his low-range pass and provided him with a cane. (*Id.* at 14, 18.) She noted that his blood pressure appeared to

8

be "poorly controlled" and prescribed an additional medication. (*Id.* at 14.) She advised him to follow up in three weeks. (*Id.*) A few days after that visit, Deane filed this lawsuit alleging that he was receiving constitutionally inadequate medical care in violation of the Eighth Amendment. (ECF 1, 10.)

On September 17, 2024, Deane was seen by Dr. Marthakis. It was noted that he was not using his cane and instead carried it into the office. He denied any abdominal pain and stated that he could not recall when he had last experienced abdominal pain. He noted that he usually experienced the pain when his blood pressure was elevated. He also denied leg pain but stated that his legs typically began to hurt if he walked the equivalent of a block or more. Dr. Marthakis performed a physical examination, noting no open sores on his feet, no pain on palpation, and no issue with his toes. Her physical examination of his abdomen revealed a nontender pulsatile mass[3] with no hepatic or spleen enlargement, and no other abnormalities. (*Id.* at 5-7.) She noted that his aortic aneurysm appeared to be asymptomatic but that his hypertension and lipidemia were risk factors for complications. She noted that further imaging of the aneurysm had already been requested. (*Id.* at 7-9.)

As of the filing of the Warden's response, Deane was scheduled to undergo an arterial doppler of his lower extremities and a CT angiogram of his abdomen and pelvis on October 21, 2024, at Franciscan Hospital in Michigan City. (ECF 19-2 ¶ 12.)

---

[3] This type of mass may be present in a patient with an abdominal aortic aneurysm. *See* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3303349/ (last visited Oct. 22, 2024).

The medical records thus reflect that Deane has serious medical needs, including high blood pressure and an aortic aneurysm. At the same time, these records reflect that medical staff at ISP have taken his needs seriously and attempted to diagnose and treat his conditions. He has received regular medical visits, laboratory testing, medications, and diagnostic imaging, and further testing has been scheduled at an outside medical facility. It is also apparent that Deane's care presents challenges given his age, risk factors, and the fact that he suffers from several different health conditions. Additionally, the record reflects that he has not always been compliant with medical advice regarding diet and exercise and taking his blood pressure medication as prescribed. The Eighth Amendment does not entitle him to make decisions that negatively impact his health and then blame medical staff for the consequences. *See Rodriguez v. Briley*, 403 F.3d 952, 953 (7th Cir. 2005) (inmate should not "be permitted to engineer an Eighth Amendment violation").

Based on the present record, Deane has not demonstrated a likelihood of success in proving that medical staff are acting with deliberate indifference to his medical needs. Nor has he demonstrated that he will suffer irreparable injury if he is not granted immediate injunctive relief before this case is resolved.

For these reasons, the plaintiff's motion for a preliminary injunction (ECF 10) is DENIED.

SO ORDERED on October 25, 2024

/s/Gretchen S. Lund  
JUDGE  
UNITED STATES DISTRICT COURT