UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| STEPHEN M. DEANE,<br><br>Plaintiff,<br><br>v.<br><br>NANCY B. MARTHAKIS, *et al.*,<br><br>Defendants. | Case No. 3:24-CV-00760-GSL |

**OPINION AND ORDER**

This matter is before the Court on the Motions for Summary Judgment [DE 81, 94] filed by Defendants Ron Neal, Nancy Marthakis, M.D., and Diane Thews, N.P. For the reasons set forth below, the Court **GRANTS** Defendants' Motions [DE 81, 94].

**Background**[1]

Dr. Marthakis is a medical doctor licensed to practice medicine in Indiana since 2012. [DE 91 at ¶ 2]. Dr. Marthakis is employed as a physician as well as the Medical Director at the Indiana State Prison (ISP) in Michigan City, Indiana. [*Id*. at ¶ 3]. Diane Thews is a nurse practitioner licensed to practice in Indiana since 1991. [*Id*. at ¶ 6]. She has been employed by ISP since 2005. [*Id*. at ¶ 7]. Her role is to provide primary care services to prisoners. [*Id*.].

[1] Plaintiff did not respond to Defendants' Statement of Material Facts. *See* N.D. Ind. L.R. 56-1(b)(2) (requiring a party opposing summary judgment to ordinarily file a response to the movant's statement of material facts, which should include the following: (A) a verbatim restatement of the statement of material facts; (B) a correspondingly numbered response following each paragraph; (C) a citation to evidence supporting each dispute of fact; and, for any additional material facts, (D) a separate section containing a short statement of each fact and a citation to evidence supporting it). Plainitff did file Statements of Disputed Factual Issues [DE 88, 101], however, those documents contain several issue statements rather than facts. *See* [*Id*.].

Due to Plaintiff's lack of response, while also appreciating his *pro se* status, the Court will use its discretion in determining what facts presented by Defendants are undisputed based on both Plaintiff's lack of response, his Statements of Disputed Factual Issues, and the available medical documentation in the record.

Plaintiff is, and was at all relevant times, incarcerated at ISP. According to the Complaint and attachments, he is 74 years old and suffers from several chronic illnesses, including gout, hypertension, and high cholesterol. *See generally* [DE 1]. As a result, he is enrolled in the Chronic Care Clinic at ISP which is a program for patients with chronic health issues such as diabetes, hypertension, and high cholesterol. [*Id*. at ¶ 10]. Members of the Chronic Care Clinic are automatically scheduled to see providers every 12 weeks for chronic conditions. [*Id*.].

On January 6, 2023, Dr. Marthakis had an appointment to see Plaintiff regarding his chronic conditions, but he failed to show for his appointment. [DE 91 at ¶12]. On February 3, 2023, Plaintiff presented to Kimberly Pflughaupt, DNP, for a follow-up visit regarding his conditions of hypertension, hyperlipidemia, and gout. [DE 83 at ¶ 1]. At that appointment, it was noted that Plaintiff weighed 330 pounds, his hypertension was well controlled by medication, his hyperlipidemia was stable due to medications, and a physical examination revealed no abdominal tenderness. [*Id*.]. DNP Pflughaupt renewed Plaintiff's prescriptions and ordered an annual EKG to be conducted. [*Id*.]. A few weeks later, on February 21, 2023, Plaintiff presented for the annual EKG which resulted in normal findings. [*Id*. at ¶ 2]; [DE 19-1 at 141].

On March 10, 2023, Plaintiff presented to Tanya Hoadley, RN, for his annual nurse well visit. [DE 83 at ¶ 3]. RN Hoadley noted that she provided wound care to a boil on Plaintiff's left armpit, examined him, and administered the shingle's vaccine. [*Id*.]; [DE 19-1 at 112-13]. She cleared him for kitchen duty and he returned to his housing unit in stable condition. [DE 83 at ¶ 3]. On that same date, Nurse Plughaupt submitted paperwork to refer Plaintiff for an abdominal ultrasound to rule out an abdominal aortic aneurysm due to his age and smoking history. [DE 91 at ¶ 16].

On March 20, 2023, Plaintiff underwent the abdominal aortic ultrasound. [DE 83 at ¶ 5]. A mid-abdominal aortic aneurysm measuring 3.5 centimeters was found. [*Id.*]. However, it was noted that there was no evidence of acute complication from the aortic aneurysm. [*Id.*]. On March 20, 2023, Dr. Robert Mehl recommended that Plaintiff undergo a CT examination for further evaluation. [*Id.*].

Between May 2023 and April 2024, Plaintiff attended several visits with medical staff that were mostly unremarkable, however he had high blood pressure noted at some visits which was a result of him not having had his medication prior to the appointments. [DE 83 at ¶¶ 6-10]. Also of note, he did not show for his scheduled annual health screen in March 2024. [*Id*. at ¶ 8]. An exam of his abdomen in April 2024 was reportedly normal. [*Id*. at ¶ 10].

On May 16, 2024, Plaintiff presented for a visit due to pain in his left foot. [DE 83 at ¶ 11]. He requested a 200 or below range pass due to his foot pain, which was ultimately issued by a nurse later that day. Dr. Marthakis ordered an x-ray of his foot. [*Id.*]. His blood pressure was 158/85, though he had not taken his medication that day. [*Id*].

On July 4, 2024, Plaintiff presented for a nurse visit complaining of leg pain and wishing to review his lab results. [DE 83 at ¶ 12]. His blood pressure was 200/100. [*Id.*]. The nurse administered blood pressure medication as well as Tylenol for his leg pain. [*Id.*]. An hour later, Plaintiff's blood pressure was rechecked, but was still elevated at 200/100. [*Id*. at ¶ 13]. Plaintiff then signed a refusal form refusing to stay in medical and take medication to lower his blood pressure. [*Id.*]. The nurse explained the risks of him refusing further care, which Plaintiff confirmed he understood. [*Id.*].

On July 25, 2024, Plaintiff presented for a nurse visit after falling on a wet floor causing him pain in the groin area. [DE 83 at ¶ 14]. He was offered an x-ray but declined. [*Id.*]. A few

days later, on July 29, 2024, he returned for a provider visit complaining of leg pain and numbness in his feet. [*Id*. at ¶ 15]. He also reported that his previous abdominal ultrasound revealed abdominal aortic aneurism, but was negative for abdominal pain, nausea, or vomiting. [*Id*.]. At that time, his blood pressure and physical examination was otherwise normal. [*Id*.]. That same day, Dr. Marthakis ordered an ultrasound to monitor Plaintiff's abdominal aortic aneurism and labs to which he was to follow up with her once the results were in. [*Id*. at ¶ 16]. Dr. Marthakis ordered naproxen to treat Plaintiff's leg pain and directed Plaintiff to follow up if his symptoms did not improve. [*Id*. at ¶ 16].

Less than a week later, Plaintiff sent a letter, dated August 4, 2024, to Warden Neal informing him that he was concerned about the treatment he was receiving for his abdominal aneurysm. [DE 83 at ¶ 17]. The letter detailed Plaintiff's medical conditions and pain as well as the following:

> Recently I found out I have a abdominal aneurysm, a serious medical condition. Medical knew it 17 months ago and didn't inform me[.] … It was recommended that I have a CT by the D[octor] that read the ultra[]sound [but] that hasn't happened. … I was told I would get another ultrasound and that hasn't happened.

[DE 81-1 at 5]. The letter was forwarded on to the Prison's Health Services Administrator to further assess Plaintiff's concerns as Warden Neal does not have medical training and he relies on the treatment decisions made by prison medical staff . [DE 83 at ¶ 18]. Plaintiff did not send any other correspondence to Warden Neal or communicate with him regarding his medical conditions at any other time. [*Id*. at ¶ 19].

On August 6, 2024, Plaintiff underwent the second abdominal aortic aneurysm screening which revealed that it had grown to 3.8 centimeters. [DE 91 at ¶ 37]. The doctor noted that he did not experience any acute complications as a result of the aneurysm. [DE 83 at ¶ 20]. On that same

date, Plaintiff had lab work done which ruled out diabetes as a potential cause of his leg pain. [DE 91 at ¶¶ 38-39]. On August 22, 2024, Plaintiff presented for a sick call visit where his blood pressure measured at 194/99, reported abdominal pain, and numbness in his legs. [*Id*. at ¶ 21]. As a result, Dr. Marthakis reviewed the ultrasound results, ordered an EKG, and ordered that Plaintiff remain in the medical unit for observation. [*Id*.]. Shortly thereafter, the EKG was performed and showed no concerning changes. [*Id*. at ¶ 21]. Plaintiff reported that he no longer had abdominal pain and that he thought it was caused by his heightened blood pressure. [*Id*.]. A follow-up visit was scheduled for August 27, 2024, but Plaintiff did not show. [*Id*. at ¶ 24].

On September 3, 2024, Plaintiff presented to medical staff out of concern for his aortic aneurysm and abdominal pain. [DE 83 at ¶ 24]. The provider placed an urgent request for a CT angiogram of the abdomen and pelvic in order to assess whether Plaintiff needed to be referred to a surgeon due to the growth of the aortic aneurysm in the past year. [*Id*. at ¶ 25]. An arterial doppler was also ordered to assess Plaintiff's bilateral lower extremities. [*Id*. at ¶ 26]. Plaintiff's low-range pass was reviewed and he was provided with a cane for ambulation. [*Id*. at ¶26].

On September 17, 2024, Plaintiff had a medical visit with Dr. Marthakis. [DE 83 at ¶ 28]. He denied abdominal pain and could not recall the last time he experienced abnormal pain, but stated that he usually experienced such pain when his blood pressure is elevated. [*Id*.]. Plaintiff also denied having leg pain at the visit but stated that he usually experienced leg pain when he walked for about a block. [*Id*.]. It was also noted that he was not using a cane at the visit. [*Id*.]. Dr. Marthakis did note a nontender pulsatile mass on Plaintiff's abdomen with no hepatic or spleen enlargement, and that his aortic aneurysm was asymptomatic although his hypertension and lipidemia were risk factors. [*Id*. at ¶ 28-29]. Dr. Marthakis did not see any need to send Plaintiff to the emergency department at that time and that further imaging had been requested. [*Id*. at ¶29].

The next day, Plaintiff requested an offsite CT scan of his abdomen and pelvis to evaluate his aortic aneurysm and reported that he was having abdominal pain. [DE 83 at ¶30]. On October 21, 2024, Plaintiff was transported to Franciscan hospital for a CT scan. [*Id*. at ¶ 31]. The scan resulted in "no acute pulmonary abnormality" and revealed that the abdominal aortic aneurysm was 3.5 centimeters, smaller than it appeared on the 2024 ultrasound. [DE 81-2 at 23]; [DE 91 at ¶ 50].

In December 2024 and January 2025, Plaintiff reported to the medical unit three times complaining of numbness in his legs. [DE 83 at ¶¶ 32-34]. During those visits, Plaintiff's blood pressure was elevated and as a result, providers adjusted Plaintiff's medications on some of those occasions. [*Id*.]. Plaintiff was also directed to come to the nurse's station twice weekly for blood pressure checks. [*Id*.].

In February 2025, Nurse Thews discussed the arterial doppler bilateral extremity ultrasound with Plaintiff. [DE 83 at ¶ 35]. The following month, on March 18, 2025, she requested an outpatient vascular surgery consultation for Plaintiff's abdominal aortic aneurysm. [*Id*. at ¶ 36]. A few days later, on March 24, 2025, Plaintiff presented to Nurse Thews for lower body pain and inquired whether or not his vascular surgery consultation had been approved. [*Id*. at ¶ 37]. He was told that the surgery consultation request was still pending and was offered medication for pain management but denied it. [*Id*.].

In April 2025, Plaintiff attended two routine visits with Dr. Marthakis with no notable findings. [DE 83 at ¶¶ 39-40]. Also, on April 23, 2025, Plaintiff had an outside medical consultation with Dr. Robert March at Franciscan Hospital. [*Id*. at ¶ 41]. Dr. March reviewed Plaintiff's medical history including his 2024 CT scan. [*Id*.]. Medical records from the visit show Dr. March's findings to be unremarkable with comments as to Plaintiff's abdomen including that

it was "soft, non-tender … [and] unable to detect aneurysm on palpitation." [DE 21-2 at 66]. As to his extremities, Dr. March noted: "[a]traumatic, no cyanosis, clubbing or edema." [*Id.*]. Dr. March ordered a follow up scan for the October 2025, to monitor Plaintiff's aortic aneurysm and instructed Plaintiff to avoid heavy lifting. [*Id.*].

On May 8, 2025, lab work showed that Plaintiff's A1c was normal, indicating that he was not diabetic. [DE 91 at ¶ 69]. Plaintiff had an appointment with Nurse Thews scheduled for June 6, 2025, but he did not show up. [Id. at ¶ 70]. Dr. Marthakis and Nurse Thews have found no other explanation, other than Plaintiff's gout, to be the cause of his ongoing leg and feet pain. [Id. at ¶ 71]. They have also offered Plaintiff several treatment options to manage the pain, but Plaintiff has declined them. [*Id.* at ¶ 72].

*Procedural History*

Plaintiff, a prisoner without a lawyer, initiated this lawsuit against Defendants, Nancy B. Marthakis, M.D., Diane Thews, N.P., and Ron Neal, Warden of the Indiana State Prison, on September 9, 2024. [DE 1]. The Complaint alleges that the Defendants violated Plaintiff's Eighth Amendment Rights by acting with deliberate indifference to his medical needs, specifically as it relates to an abdominal aortic aneurysm and severe leg pain. [*Id.*]. Plaintiff alleges that Defendants engaged in "wanton infliction of pain" in violation of his Eighth Amendment rights. [*Id.*]. Plaintiff has been permitted to proceed on an Eighth Amendment claim for injunctive relief *only* as it relates to his ongoing need for medical treatment against Warden Neal. [DE 7 at 5]. As for Dr. Marthakis and Nurse Thews, Plaintiff is proceeding against them in their personal capacity for damages for deliberate indifference to his need for medical care to address leg pain and an abdominal aortic aneurysm in violation of the Eighth Amendment. [*Id.*].

## Legal Standard

A court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if, under the relevant substantive law, it is outcome determinative. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A dispute over a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The movant "bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of" the evidence that "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To survive a properly supported motion for summary judgment, "the nonmoving party must present evidence sufficient to establish a triable issue of fact on all elements of its case." *McAllister v. Innovation Ventures, LLC*, 983 F.3d 963, 969 (7th Cir. 2020).

## Discussion

Under the Eighth Amendment, inmates are entitled to constitutionally adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Deliberate indifference means that the defendant "acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being

harmed [and] decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005).

For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, he or she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). Inmates are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019), nor are they entitled to "the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Negligence does not state a claim. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (Negligence or medical malpractice do not constitute deliberate indifference).

The medical records reflect that Plaintiff *has* serious medical needs, including high blood pressure and an aortic aneurysm. The medical records further reflect that medical staff at the prison have taken his needs seriously and attempted to diagnose and treat his conditions. *See generally* [DE 83, 91]. Plainitff has received regular medical visits, laboratory testing, medications, and diagnostic imaging, and further testing was ordered at an outside medical facility. [*Id.*]. Plaintiff was also seen by medical providers outside of the prison, including Dr. March. [DE 21-2 at 66]. The impressions of Plaintiff's aortic aneurysm by prison medical staff and by Dr. March was the same: "aortic aneurysm was asymptomatic" and that follow-up CT scans were ordered to continue monitoring its progress. [*Id.*].

Records also demonstrate that every time Plaintiff complained of leg pain, he was provided treatment including pain medication and a cane for ambulation. [DE 91 at ¶¶ 30, 32, 34, 38-41, 43, 46-49]. Plainitff was also provided a TED hose, repeat lab work to rule out diabetes as the cause,

and had an arterial doppler study conducted which revealed that his vascularization was normal. [*Id*. at ¶¶ 17, 39, 49, 62, 64, 69]. Whether or not Plaintiff agrees with the course of treatment is irrelevant as Plaintiff is "not entitled to demand specific care," *Walker*, 940 F.3d at 965, nor is he entitled to "the best care possible." *Forbes*, 112 F.3d at 267. Rather, he is entitled to "reasonable measures to meet a substantial risk of serious harm." *Id*. at 267. Additionally, Plaintiff was offered medications to manage the pain, and while he accepted it on some occasions, he denied it on others. [*Id*. at ¶¶ 30, 34].

More significantly, Plaintiff has provided no evidence or specific facts that show the care provided to him is materially disputed or that it somehow departed from accepted professional judgment, practice, or standards. *Jackson*, 541 F.3d at 697; *see Walker*, 940 F.3d at 965 (explaining that courts "defer to medical professionals' treatment decisions unless there is evidence that no minimally competent professional would have so responded under those circumstances"). Instead, he alleges that the medical providers failed to follow the standard of care by failing to monitor his aortic aneurysm for more than a year, failed to inform him of the results of the aneurysm screening, failed to follow the specialist's recommendations for a CT scan, and provided him with an ineffective course of medical treatment for his leg pain and blood pressure. *See generally* [DE 88]. However, Plainitff has not disputed any of the facts detailing the extensive care provided to Plaintiff nor has he disputed the contents of the medical records presently before the Court. Instead, Plainitff provided the Court with a "Statement of Disputed Factual Issues" which consists of legal issue statements including, *inter alia*, "[w]hether or not Plaintiff suffers from a serious medical condition[]", "[w]hether or not Defendants failed to properly monitor treat and or correct or delayed to properly monitor or treat and correct Plaintiff's abdominal aneurysm[]", "[w]hether or not Defendants followed Dr. Mehl's Recommendation for a CT scan", "[w]hether or not

Defendants followed standard of care [for] monitoring aneurysm at least one a year", and so on. [DE 88].

Plaintiff has offered no evidence that Dr. Marthakis, Nurse Thews, or Warden Neal, acted with deliberate indifference to his medical needs. Accordingly, summary judgment in favor of all Defendants is proper.

## CONCLUSION

The Court hereby **GRANTS** Defendants' Motions for Summary Judgment [DE 81, 94]. The Court **DIRECTS** the Clerk of Court to enter judgment against Plaintiff and in favor of Defendants. Plaintiff takes nothing by his Complaint.

SO ORDERED.

ENTERED: August 20, 2026

/s/ GRETCHEN S. LUND
Judge
United States District Court